F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ NOV 14 2019 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- x
T.W.,

Plaintiff,

- against -

NEW YORK STATE BOARD OF LAW
EXAMINERS, *et al.*

Defendants.
------------------------------------------------------- x

**MEMORANDUM & ORDER**

16-CV-3029 (RJD)(RLM)

DEARIE, District Judge.

Plaintiff T.W. commenced this action against the New York State Board of Law

Examiners, its Executive Director, and its members (collectively, "the Board" or "Defendants"),

alleging that Defendants discriminated against her by denying her certain accommodations

during the July 2013 and July 2014 sittings of the New York State bar examination, in violation

of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq., and

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 et seq. The Court assumes the parties'

familiarity with the underlying facts and legal issues. After extensive briefing and limited

discovery on the issue of sovereign immunity, the Court denied Defendants' Motion to Dismiss

on the basis that Plaintiff's claims are barred by sovereign immunity under the Eleventh

Amendment. Defendants now seek reconsideration of the Court's decision. For the reasons

described below, Defendants' Motion for Reconsideration is DENIED.

### STANDARD OF REVIEW

Motions for reconsideration in this district are governed by Rule 59(e) of the Federal

Rules of Civil Procedure and Local Civil Rule 6.3 of the Southern and Eastern Districts of New

York. "The decision to grant or deny a motion for reconsideration is within the sound discretion

of the district court, and 'is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" McRae v. Norton, No. 12-CV-1537 KAM, 2012 WL 1744849, at *1 (E.D.N.Y. May 16, 2012) (quoting Mangino v. Inc. Vill. of Patchogue, 814 F. Supp. 2d 242, 247 (E.D.N.Y. 2011)). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995) (citations omitted).

## DISCUSSION

Defendants assert that the Court erred in its factual findings and legal conclusions regarding whether the Board is a "program or activity" of UCS and disregarded binding Second Circuit precedent. The Court finds these claims largely unfounded and, ultimately, inconsequential.

Defendants point to three factual findings they contend are erroneous. First, the Board claims that the Court was incorrect in finding that "the Board's budget requests do not include funding for staff salaries or benefits because UCS centrally budgets for the salaries and benefits of all its employees, including the Board's." T.W. v. New York State Bd. of Law Examiners, No. 16CV3029RJDRLM, at 12 (E.D.N.Y. Sept. 18, 2019) [Hereinafter "Order"]. Mary Witting, UCS's Principal Budget Analyst, testified that when the Board submits its budget to UCS, the budget generally does not include funding requests for Board personnel. Rather, UCS "budget[s] for all personal service centrally." Witting Depo. 110:21-111:5. While Board employee salaries and benefits may ultimately be reflected in the Board's budget, it is UCS who handles this process.

2

Second, the Board raises that the Court misstates how bar examination fees are collected from the Board's account. As Plaintiff admits, it is true that the New York State Comptroller's Office ("OSC") sweeps bar examination fees from the Board's account into the *State's* General Fund and not into a *UCS* general fund. The Court corrects its factual findings on this point. Nevertheless, given the significant relationship between the Board and UCS, as described below, this does not alter the Court's conclusion that the Board is a "program or activity" of UCS.

Third, the Board argues that the Court's finding that the Board "indirectly" benefits from federal funds lacks support. See Order at 5-7. The Board reasons that OSC does not know whether an individual bar examinee has received fee reimbursements via federal dollars, that there is no evidence that UCS specifically receives any of the fees that are swept into the State's General Fund and comingled with other revenue, and that the funds are not used to support the Board. As a threshold matter, the finding at issue was made pursuant to the Court's decision that the Board does *not* receive earmarked federal financial assistance and is unrelated to the question of whether the Board is a "program or activity" of UCS. Additionally, there is evidence in the record that the Board "indirectly benefits from the federal assistance afforded" to individuals who pay fees to the Board. See Nat'l Collegiate Athletic Ass'n v. Smith, 525 U.S. 459, 468 (1999). The Board acknowledges that some bar applicants and admitted attorneys receive reimbursements for fees paid to the Board from the U.S. Department of Veterans Affairs and two state agencies that receive federal funding, the Adult Career and Continuing Education Services-Vocational Rehabilitation ("ACCESS-VR") and the New York State Commission for the Blind ("NYSCB"). While it is true that the Board chooses not to accept these funds directly from agencies and does not track who ultimately receives reimbursements, this does not change that some applicants obtain federal funds in reimbursement for payments made to the Board.

3

The Board also argues that the Court misapplies <u>Brewer</u> and <u>Sharer</u> in concluding that the Board is a "program or activity" of UCS. The Board primarily focuses on findings that the entities invoking immunity in those cases are funded and managed separately from the entities that accept federal funds. <u>See Sharer v. Oregon</u>, 581 F.3d 1176, 1180 (9th Cir. 2009) ("[T]hese entities, though part of the same branch of government, have distinct funding sources and administrative apparatuses."); <u>Brewer v. Wisconsin Bd. of Bar Examiners</u>, No. 04-C-0694, 2006 WL 752922, at *4 (E.D. Wis. Mar. 22, 2006), <u>aff'd</u>, 270 F. App'x 418 (7th Cir. 2008) ("The court infers from the fact that Wisconsin funds the Court and the Office [of State Courts] through separate appropriations (and does not fund the Board at all), and from the fact that the[y] . . . have independent control over their staff, that the State considers the three to be separate departments, agencies, or instrumentalities."). Though the Board is ultimately funded from a different account than much of UCS, its funding is not handled independently of UCS. The Board's budget is approved by the Court of Appeals—which is part of UCS—and ultimately subsumed within UCS's budget. <u>See</u> Witting Depo. 45:25-46:2, 51:2-52:4. The Board is also financially subsidized by UCS through the use of UCS's payroll system, phones, scanner, backup data services, legal research accounts, and test processing machines.

Additionally, the Board is administratively tied to UCS in significant ways. Beyond appointing members to the Board, <u>see</u> N.Y. JUD. L. § 56, the Court of Appeals is empowered to "prescribe rules providing for a uniform system of examination of candidates for admission to practice as attorneys and counsellors, which shall govern the state board of law examiners in the performance of its duties," fix Board member compensation, and authorize the Board to appoint and remove employees. <u>Id.</u> §§ 53, 461. The Court of Appeals can provide offices to the Board or authorize it to procure offices in Albany, and the Board must "render an annual account of all its

4

receipts and disbursements to the [C]ourt of [A]ppeals." Id. §§ 461-62. The Board must receive

approval from the Court of Appeals to advertise vacant positions, which are posted on the UCS

website, and employees of the Board are considered UCS employees. Indeed, UCS can even

transfer employees from other divisions to the Board. Compare with Sharer, 581 F.3d at 1180

("Except for the appointment or removal of commission members . . . the commission

[overseeing the entity claiming sovereign immunity] and employees of the commission are not

subject to the exercise of administrative authority and supervision by the Chief Justice of the

Supreme Court as the administrative head of the Judicial Department. By contrast, the Chief

Justice's broad authority over the Judicial Department includes the power to establish its

budgets, set its staffing levels and "[a]ssign or reassign all court staff." (internal quotations and

citations omitted)). Putting aside that Brewer and Sharer are not binding on this Court, the Court

did not misapply them given the factual differences in this case.

The Board attempts to further argue that the Court's Order makes three legal errors in

finding that UCS waived the Board's immunity. First, it contends that the Court's statement that

UCS's acceptance of federal funds waived immunity for "all of [its] operations" indicates that

Section 504 applies to the entire New York judicial branch and all of its sub-agencies. See Order

at 12. The Court did not make such a broad pronouncement. The cited language is a direct quote

from the statute's definition of "program or activity." See U.S.C. § 794(a)(1)(A) ("[T]he term

'program or activity' means *all of the operations* of . . . a department, agency, special purpose

district, or other instrumentality of a State or of a local government." (emphasis added)). Neither

party contests that UCS has waived its immunity by accepting federal funds. At issue is whether

the Board, as an affiliate of UCS, falls under Section 504's definition of "program or activity."

5

The Court answered that question in the negative; it did not pass on whether other judicial branch entities are "program[s] or activit[ies]" of UCS.

Second, the Board asserts that the Court failed to conduct the appropriate waiver analysis under Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn. See 280 F.3d 98, 114 (2d Cir. 2001) ("As is the case with the waiver of any constitutional right, an effective waiver of sovereign immunity requires an 'intentional relinquishment or abandonment of a *known* right or privilege.'" (quoting Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 682 (1999)). Defendants' arguments conflate the Court's inquiry regarding whether the Board accepts federal financial assistance and whether the Board is a "program or activity" within UCS. This Court found that the Board is subject to Section 504 based on the latter analysis. Garcia deals with the former. In Garcia, the Second Circuit sought to determine whether New York waived its sovereign immunity by accepting federal funds. See id. But the parties here do not contest that UCS intentionally and knowingly waived its sovereign immunity by receiving federal funds. Rather they seek to determine whether the Board is considered a program or activity within UCS such that UCS's valid waiver extends to the Board.

Third, the Board posits that because the Court found that Bartlett no longer applies and the Board had the power to cease directly accepting federal funds, it should conclude that the Board is independent of UCS. Again, that the Board does not directly accept federal funds does not change whether it is a "program or activity" under UCS. Even though UCS was allegedly uninvolved in the Board's decision to stop accepting direct federal funds, the record establishes that the Board is financially and administratively tied to UCS as a "program or activity."

Finally, the Board argues that the Court erred in its decision not to decide whether Title II of the ADA is a valid exercise of Congressional authority under Section 5 of the Fourteenth

Amendment. The Supreme Court instructs that courts should avoid passing on the constitutionality of legislation where unnecessary. See Blair v. United States, 250 U.S. 273, 279 (1919) ("Considerations of propriety, as well as long-established practice, demand that [courts] refrain from passing upon the constitutionality of an act of Congress unless obliged to do so in the proper performance of our judicial function, when the question is raised by a party whose interests entitle him to raise it."). Here, unlike in the cases Defendants cite, there is no need to decide the constitutionality of Title II of the ADA because the rights and remedies under Title II of the ADA are identical to those under the Rehabilitation Act. See Ross v. City Univ. of New York, 211 F. Supp. 3d 518, 528 (E.D.N.Y. 2016) (declining to decide whether sovereign immunity bars Plaintiff's claim under Title II of the ADA "[b]ecause sovereign immunity does not bar plaintiff's Rehabilitation Act claim, [and thus] the court has subject matter jurisdiction over this action regardless of [Defendant's] immunity from the ADA claim.") Deciding the issue does not change the discovery or ultimate judgment to which Defendants may be subject. Compare with Smith v. Reagan, 841 F.2d 28, 31 (2d Cir. 1988) (finding the court should have decided whether immunity applies before proceeding to discovery where, if successful, "the State would be exempted from participating in *any* pre-trial procedures."). Defendants note that in Dean v. University at Buffalo School of Medicine and Biomedical Sciences the Second Circuit remanded the question of sovereign immunity under Title II of the ADA and the Rehabilitation Act after reversing a dismissal under Federal Rule of Civil Procedure 12(b)(6). See 804 F.3d 178, 193 (2d Cir. 2015). But contrary to Defendants' suggestion, the Second Circuit did not suggest that the lower court erred in not previously deciding immunity or that the lower court necessarily needed to decide both issues. In fact, in providing general guidance on the relevant standard for determining sovereign immunity under Title II of the ADA, the Second Circuit

7

caveated its directions to apply only "*if* the district court reaches this issue on remand." Id. at 195 (emphasis added).

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Reconsideration is denied.

SO ORDERED.

Dated: Brooklyn, New York
November 12, 2019

s/Raymond J. Dearie
RAYMOND J. DEARIE
United States District Judge