UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

T.W.,

                Plaintiff,

– against –

NYS BOARD OF LAW EXAMINERS, et al.,
                Defendants.

No. 16-cv-03029 (RJD) (MMH)

**SECOND SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER
SUPPORT OF THE DEFENDANTS' MOTION TO DISMISS**

LETITIA JAMES
Attorney General of the
State of New York
*Attorneys for Defendants*
28 Liberty Street, 16th Floor
New York, New York 10005
(212) 416-8528

ELIZABETH A. FIGUEIRA
Assistant Attorney General
    <u>of</u> <u>Counsel</u>

## TABLE OF CONTENTS

                                                  **Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

PROCEDURAL HISTORY ....................................................................................................... 2

ARGUMENT .............................................................................................................................. 2

I.       Relevant Legal Standards ................................................................................... 2

II.     Both Approaches to the Analysis of the Title II Claim Establish That Dismissal is Appropriate ............................................................................................................. 3

III.   Plaintiff's Title II Claim Should Be Dismissed Under the Congruence and Proportionality Test ............................................................................................. 5

A.    Obtaining a Professional License to Practice Law Does Not Implicate a Fundamental Right ............................................................................................... 6

B.    There is No History or Pattern of Discrimination in Professional Licensing ................... 7

IV.   Plaintiff Does Not Allege That She Was Barred Physical Access to the Courts ............. 8

V.    Plaintiff Does Not Allege That the Board's Denial of Reasonable Accommodation Was Motivated By Animus or Ill Will Towards Plaintiff or Plaintiff's Disability .......................................................................................... 10

VI.   The *Ex Parte Young* Exception Does Not Apply to Plaintiff's Request for Relief ....... 12

CONCLUSION ........................................................................................................................ 14

## TABLE OF AUTHORITIES

**Cases** Page(s)

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................................................................3

*Bd. Of Trustees of Univ. of Alabama v. Garrett*,
  531 U.S. 356 (2001)..........................................................................................................5

*Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*,
  280 F.3d 98 (2d Cir. 2001)..............................................................................................12

*Glueck v. Nat'l Conf. of Bar Examiners*,
  No. SA-17-cv-451 (XR), 2017 WL 5147619 (W.D. Tex. Nov. 3, 2017)...............................6, 9

*Gribbin v. New York State Unified Ct. Sys.*,
  No. 18-cv-6100 (PKC) (AKT), 2020 WL 1536324 (E.D.N.Y. Mar. 31, 2020),
  *aff'd*, 838 F. App'x 646 (2d Cir. 2021)............................................................... passim

*Kimel v. Florida Bd. Of Regents*,
  528 U.S. 62 (2000)............................................................................................................3

*Kohn v. State Bar of California*,
  497 F. Supp. 3d 526 (N.D. Cal. 2020) ................................................................... 4, 6-7

*Makarova v. United States*,
  201 F.3d 110 (2d Cir. 2000)..............................................................................................3

*Manuel v. New York*,
  No. 18-cv-11820 (VB), 2020 WL 5775271 (S.D.N.Y. Sept. 28, 2020) ..................................10

*McKnight v. Middleton*,
  699 F. Supp. 2d 507 (E.D.N.Y. 2010) ................................................................................ 8-9

*Oliver v. Virginia Bd. of Bar Examiners*,
  312 F. Supp. 3d 515 (E.D. Va. 2018), *appeal dismissed*, 2018 WL 6192209
  (4th Cir. July 23, 2018) ................................................................................................ 4, 9-10

*Russell v. New York*,
  No. 18-cv-8543 (VSB), 2019 WL 4805687 (S.D.N.Y. Sept. 30, 2019)........................3, 10, 12

*Saqr v. Univ. of Cincinnati*,
  No. 18-cv-542, 2019 WL 699347 (S.D. Ohio Feb. 20, 2019) ..................................................8

*Schwarz v. Georgia Composite Med. Bd.*,
  No. 18-cv-1142 (MLB), 2020 WL 7773481 (N.D. Ga. Dec. 30, 2020) ...................................7

*Strojnik v. State Bar of Arizona*,
    446 F. Supp. 3d 566 (D. Ariz.), *aff'd*, 829 F. App'x 776 (9th Cir. 2020) ............................ 9-10

*T.W. v. New York State Bd. of L. Examiners*,
    996 F.3d 87 (2d Cir. 2021) ............................................................................................ 2-3

*Tennessee v. Lane*,
    541 U.S. 509 (2004) ................................................................................................. passim

*United States v. Georgia*,
    546 U.S. 151 (2006) ............................................................................................ 4, 10, 12

*Will v. Michigan Dep't of State Police*,
    49 U.S. 58 (1989) ............................................................................................................ 3

*Wright v. Ernst & Young LLP*,
    152 F.3d 169 (2d Cir. 1998) ............................................................................................ 9

**CONSTITUTIONS**

Eleventh Amendment ............................................................................................... passim

Fourteenth Amendment ............................................................................................ 3-5, 12

**FEDERAL STATUTES**

Americans with Disabilities Act of 1990 ("ADA") ................................................... passim

Rehabilitation Act of 1973
    §§ 504, 505(a)(2) ......................................................................................................... 1-2

**RULES**

Fed. R. Civ. P. 12(b)(1) and 12(b)(6) ........................................................................ 2-3, 10

**MISCELLANEOUS AUTHORITIES**

http://ww2.nycourts.gov/attorneys/registration/index.shtml ............................................ 13

Defendants New York State Board of Law Examiners ("the Board")[1] and the individually-named Board members (collectively "Defendants"), by and through their attorney, Letitia James, Attorney General for the State of New York, respectfully submit this second supplemental memorandum of law in further support of their motion to dismiss Plaintiff T.W.'s ("Plaintiff") complaint (Dkt. 1, 47) pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.[2]

## PRELIMINARY STATEMENT

In 2016, Plaintiff brought this action against Defendants, asserting that their failure to grant her requested accommodations on certain bar exams violated Title II of the Americans with Disabilities Act ("Title II") and Section 504 of the Rehabilitation Act ("Section 504").[3] Plaintiff cannot meet her burden to establish subject matter jurisdiction for her Title II claim. This claim is barred because the statute does not validly abrogate the State's sovereign immunity with respect to professional licensing examinations. *See* Dkt. 40 at 8-14; 41 at 1-6.

As per the fundamental rights analysis, Plaintiff has failed to show that any constitutional right has been violated or that the actions of Defendants were motivated by animus or ill will. *See id.*; Dkt. 41 at 1-4. Recent decisions in other circuits have reaffirmed that there is no constitutional right to a professional license or to practice one's desired profession. Plaintiff's attempt to circumvent this precedent by asserting that her fundamental right of access to the courts was abridged is also contrary to recent decisions.

---

[1] During this proceeding the Board has also been abbreviated as "BOLE."
[2] The parties electronically filed redacted documents to remove Plaintiff's full name pursuant to the Court's Order dated September 25, 2017. *See* Dkt. 32. Defendants incorporate their initial motion to dismiss and supplemental briefing by reference herein. *See* Dkt. 38-41, 78-80.
[3] Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131-12165; Rehabilitation Act of 1973, § 505(a)(2), as amended, 29 U.S.C. § 794.

Further, Plaintiff has not alleged any facts showing that Defendants' actions were motivated by animus or ill will. Plaintiff admits that she was provided accommodations each time she took the bar examination, even though she may have disagreed with specific accommodations provided during the first two exams. *See* Dkt. 47 at ¶¶ 48, 53, 58.

## PROCEDURAL HISTORY

On July 10, 2016, Plaintiff filed her complaint against Defendants, asserting claims of disability discrimination under Title II and Section 504. (Dkt. 1, 47). On November 3, 2016, Defendants moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), and the parties supplemented this motion from June through August 2018, mainly focusing on the Section 504 claim. Dkt. 38-41, 78-80.[4] On September 18, 2019, this Court denied Defendants' motion to dismiss on the Section 504 claim and deferred ruling on the Title II claim. Dkt. 86 at 13. On November 14, 2019, this Court denied Defendants' motion for reconsideration in an order dated November 12, 2019. Dkt. 90. On April 28, 2021, the Second Circuit reversed the district court's judgment on the Section 504 claim, dismissed that claim, and remanded for further proceedings on the Title II claim. *T.W. v. New York State Bd. of L. Examiners*, 996 F.3d 87, 89 (2d Cir. 2021).[5]

## ARGUMENT

### I. RELEVANT LEGAL STANDARDS

"A case is properly dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Gribbin v. New York State Unified Ct. Sys.* No. 18-cv-6100 (PKC) (AKT), 2020 WL 1536324, at *2 (E.D.N.Y. Mar. 31, 2020), *aff'd*, 838 F. App'x 646 (2d Cir. 2021). "On a

---

[4] Plaintiff has withdrawn her claims under Title III of the ADA and the New York City Human Rights Law.
[5] All legal citations herein omit quotations, brackets, ellipses, and internal citations.

2

motion invoking sovereign immunity to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of proving by a preponderance of evidence that jurisdiction exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In determining a motion to dismiss pursuant to FRCP 12(b)(1), courts "may refer to evidence outside the pleadings." *Id.*

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts must also accept all factual allegations in the complaint as true and draw all inferences in a light that is most favorable to the plaintiff. *Id.* While courts must accept all factual allegations in the complaint as true, "mere conclusory statements do not suffice." *Id.*

## II. BOTH APPROACHES TO THE ANALYSIS OF THE TITLE II CLAIM ESTABLISH THAT DISMISSAL IS APPROPRIATE

"The Eleventh Amendment extends beyond the states themselves to arms of the state." *Russell v. New York*, No. 18-cv-8543 (VSB), 2019 WL 4805687, at *3 (S.D.N.Y. Sept. 30, 2019). Immunity is applicable "unless the State has waived its immunity…or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." *Will v. Michigan Dep't of State Police*, 49 U.S. 58, 66 (1989). It is undisputed that the Board is an arm of the state. *T.W.*, 996 F.3d at 92; *see also* Dkt. 47 at ¶ 78.

Section 5 affords Congress "the authority both to remedy and deter violation of rights guaranteed [by the Fourteenth Amendment] by prohibiting a somewhat broader swath of conduct, including that which is not itself forbidden by the Amendment's text." *Kimel v. Florida Bd. Of Regents*, 528 U.S. 62, 81 (2000). While Section 5 authorizes Congress to enact "prophylactic legislation," the preventative measures "may not work a substantive change in the governing law." *Oliver v. Virginia Bd. of Bar Examiners*, 312 F. Supp. 3d 515, 528 (E.D. Va.

3

2018), *appeal dismissed*, 2018 WL 6192209 (4th Cir. July 23, 2018); *Tennessee v. Lane*, 541 U.S. 509, 520 (2004) (quoting *City of Boerne v. Flores*, 521 U.S. 507, 519 (1997)).

In *United States v. Georgia*, 546 U.S. 151 (2006), the Supreme Court examined whether, and to what extent, the abrogation of Eleventh Amendment immunity was a valid exercise of Congress's authority for claims filed by a plaintiff under Title II. To assess whether any particular Title II claim may proceed, the Supreme Court directed courts to determine:

> (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

546 U.S. at 159.

"In the wake of *Georgia* and *Lane*, courts have engaged in a case-by-case analysis to determine whether a fundamental right is at issue and whether Title II validly abrogates state sovereign immunity." *Kohn v. State Bar of California*, 497 F. Supp. 3d 526, 535 (N.D. Cal. 2020). From a survey of cases, it appears that some courts focus on first prong of *Georgia*, while others appear to skip ahead to the "fundamental rights" analysis. In a recent decision from this District, the court in *Gribbin* noted that "[s]ince *Lane*, courts have disagreed on the conditions required to abrogate sovereign immunity under Title II." *Gribbin*, 2020 WL 1536324, at *5. While some courts have held that Title II abrogates a state's sovereign immunity when the case implicates a "fundamental right," others have held that a Title II violation "must be motivated by discriminatory animus or ill will based on the plaintiff's disability." *Id*.

In *Gribbin*, Judge Pamela K. Chen applied both tests to the plaintiff's claims. *Id.* She first concluded that plaintiff had not established that her fundamental right of access to courts had been violated due to her various documented disabilities, as she had been involved in a

4

protracted state divorce proceeding for over ten years. *Id.* Turning to the second test, she concluded that plaintiff "failed to allege any non-conclusory allegations that Defendants' behavior was motivated by discriminatory animus or ill will towards her disabilities." *Id.* The record instead reflected a long history of accommodations for plaintiff's disability provided by the judicial defendants, and that "mere knowledge of a litigant's disability is plainly insufficient to undermine a state official's sovereign immunity." *Id.* The Second Circuit later affirmed on other grounds, leaving intact the district court's decision on the Title II claim. *See Gribbin*, 838 F. App'x at 648 (affirming dismissal based on the application of the *Rooker-Feldman* doctrine and declining to reach the alternative grounds for dismissal).

Under either approach, Plaintiff's Title II claim is barred by Eleventh Amendment sovereign immunity.

### III. PLAINTIFF'S TITLE II CLAIM SHOULD BE DISMISSED UNDER THE CONGRUENCE AND PROPORTIONALITY TEST

Where a plaintiff alleges a violation of Title II but not the Fourteenth Amendment, as in the present case, courts apply a congruence and proportionality test. *Lane*, 541 U.S. at 519. In assessing the congruence and proportionality between the injury to be prevented and the measures taken to achieve that end, courts assess (1) the scope of any fundamental right at issue; (2) whether Congress identified a pattern and history of unconstitutional conduct by the States; and (3) whether the statute is congruent and proportional to the history of discriminatory and unconstitutional treatment. *Bd. Of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 365-374 (2001). Plaintiff's claim should be dismissed under the congruence and proportionality test because there is no fundamental right to obtain a professional license, and there is no history of discrimination in professional licensing. Thus, Title II is not a congruent or proportional remedial measure.

A. <u>Obtaining a Professional License to Practice Law Does Not Implicate a Fundamental Right</u>

Plaintiff alleges that the denial of reasonable accommodations by Defendants "failed to ensure that [T.W's] performance on the bar examination was representative of her abilities." Dkt. 47 at ¶ 90. However, as noted in Defendants' previous briefing, precedent has routinely shown that a fundamental right has not been implicated when an individual takes a professional exam, seeks a professional license, or attempts to practice a desired career. Dkt. 40 at 11-12; Dkt. 78 at 24-25; *see also Glueck v. Nat'l Conf. of Bar Examiners*, No. SA-17-cv-451 (XR), 2017 WL 5147619, at *5 (W.D. Tex. Nov. 3, 2017) ("The Court finds no authority that the practice of law is a fundamental right.").

Since Defendants' last submission, this holding has been reaffirmed. In *Kohn*, plaintiff was a law school graduate who had been diagnosed with both physical and psychological disabilities. 497 F. Supp. 3d at 530-31. He had previously taken the California bar examination in July 2018, February 2019, and February 2020, and for each exam he was granted some testing accommodations but denied others. *Id*. The lawsuit was filed in advance of the October 2020 administration of the exam. *Id*. at 531. After acknowledging that plaintiff's "Title II theory [was] that he did not receive sufficient accommodations to take the California Bar and practice law in California," the court held that defendants were immune from suit under the Eleventh Amendment because "Plaintiff does not have a fundamental right to take the California Bar or to practice law." *Id*. at 536.

Plaintiff's claim here is that she was denied certain requested testing accommodations and failed the July 2013 and July 2014 bar exams as a result. Dkt. 47 at ¶¶ 49-50, 54-55; Dkt. 52 at 2. She posits that she suffered loss of employment and an inability to represent clients as a result. Dkt. 47 at ¶¶ 63-65, 74; Dkt. 52 at 3, 9. Plaintiff's claim, therefore, rests upon the denial

6

of an option to take a licensing exam, which would enable her to seek a license to practice as a lawyer. As clearly noted in multiple jurisdictions, that claim fails to implicate a loss of any fundamental right at issue, because there is no fundamental right to obtain a professional license or practice as a lawyer. *See Kohn*, 497 F. Supp. at 535 ("nor is there a fundamental right to practice law"). Research to date has not reflected an instance where a district court has held otherwise.

      B.  <u>There is No History or Pattern of Discrimination in Professional Licensing</u>

In addition to the absence of a fundamental right at issue, there is also no history or pattern of discrimination regarding professional licensing examinations. In *Roe v. Johnson*, the Southern District pronounced that the congressional record "do[es] not support the existence of a pattern of discrimination in licensing that requires preventative or remedial measures."[6] 334 F. Supp. 2d 415, 422-23 (S.D.N.Y. 2004). Professional licensing is only mentioned in the congressional record with respect to *Title III* for the purpose of addressing accessibility of test sites, which is not at issue in this case. *Id*. at 422. In more recent decisions, other circuits have reiterated this point holding that "Title II does not validly abrogate… sovereign immunity in the context of professional licensing." *Schwarz v. Georgia Composite Med. Bd.*, No. 18-cv-1142 (MLB), 2020 WL 7773481, at *6 (N.D. Ga. Dec. 30, 2020) (dismissing Title II claim where licensed physician objected to conditions imposed on his medical license after a period of suspension due to psychiatric issues).

Plaintiff attempts to subvert this precedent by arguing that disabled individuals have been discriminated against in the broader context of state programs and services. Dkt. 52 at 10-11. Such analysis, however, negates the context specific approach inherent in Title II analysis. *See*

---

[6] Defendants cited *Roe* in their reply in support of its motion to dismiss. *See* Dkt. 41 at 5.

*e.g., Saqr v. Univ. of Cincinnati*, No. 18-cv-542, 2019 WL 699347, at *6 (S.D. Ohio Feb. 20, 2019), *report and recommendation adopted*, 2019 WL 1200802 (S.D. Ohio Mar. 14, 2019) (dismissing Title II claim where medical students could not establish that defendant medical school had violated a constitutional right).

As there is no fundamental right at issue and no history of discrimination regarding professional licensing, Title II is not a congruent and proportional measure to abrogate state sovereign immunity. *Roe*, 334 F. Supp. 2d at 422. Accordingly, Plaintiff's Title II claim should be dismissed.

## IV. PLAINTIFF DOES NOT ALLEGE THAT SHE WAS BARRED PHYSICAL ACCESS TO THE COURTS

Plaintiff first argued that Defendants violated her fundamental right of access to the courts in her initial opposition. Dkt. 52 at 8-10. After invoking *Lane*, she stated that "this case deals with court access by professionals working in the legal profession." *Id.* at 8-9. She further argued that because Defendants are "gatekeepers to the practice of law in New York," they denied her "equal opportunity to become an attorney" and "barred [her] from participating in the judicial process as an attorney just as surely as physical barriers blocked the participation of the court reporter and attorney in *Lane*." *Id.* at 9-10.

In *Lane*, the Supreme Court held that "Title II pierces a state's sovereign immunity as applied to cases implicating a plaintiff's fundamental right of access to the courts." *Gribbin*, 2020 WL 1536324, at *5, quoting *McKnight v Middleton*, 699 F. Supp. 2d 507, 522 (E.D.N.Y. 2010). Plaintiff here alleges that the denial of reasonable accommodations for a disability to take the New York bar examination violated Title II, and that this conduct also violated Plaintiff's "fundamental right of access to the courts" that *Lane* and *Gribbin* confirm. The right of access discussed in *Lane* and *Gribbin*, however, is physical access to the courts to petition for redress.

8

Plaintiff's pleading does not allege any facts that would support a claim that a violation of the fundamental right to such access to the courts occurred, and it is impermissible for Plaintiff to amend her pleading by way of opposition to make this futile claim. *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (rejecting a claim because the operative pleading did not contain any allegation and the parties raised the claim only in its opposition).

Plaintiff's allegations focus instead on the fact that the Board administers a "professional licensing examination," and that her initial employer, Ropes & Gray LLP, terminated her employment in the firm's "transactional practice," just before she learned that she had passed the New York bar on her third attempt. Dkt. 47 at ¶¶ 31, 56-57, 60. Plaintiff further alleges that Ropes & Gray no longer saw her as a "star" associate after she did not pass the New York bar in July 2013, and that she was not staffed on certain matters, which required "significant responsibility," because she took leave to study for the July 2014 bar. *Id.* at ¶ 51. None of these allegations remotely suggest Plaintiff was unable to physically access any court at any time.

In their supplemental briefing in June 2018, Defendants noted that the district courts in *Glueck* and *Oliver* rejected strikingly similar Title II claims where bar applicants not only sued for the alleged failure to provide reasonable accommodations in advance of a bar examination, but also sought to expand the scope of the right of access to courts to encompass their claims. Dkt. 78 at 24-25. The *Oliver* court specifically held that this attempt was "flawed" and stated that the right of "access to the courts discussed in *Lane* is not a right to practice law and represent a client before the courts." *Oliver*, 312 F. Supp. 3d at 529.

The District of Arizona rejected a more recent attempt to expand the fundamental right of access to the courts in *Strojnik v. State Bar of Arizona*. 446 F. Supp. 3d 566 (D. Ariz.), *aff'd*, 829 F. App'x 776 (9th Cir. 2020). That plaintiff was an attorney whose license had

9

been suspended after the State Bar alleged that he had perpetuated a "fraud on the court in claiming millions of dollars in attorney's fees… as part of a scam to make money." *Id.* at 571. Plaintiff, however, claimed in federal court that the State Bar had retaliated against him in violation of Title V of the ADA because he opposed conduct that violated Title II, by filing "more than a thousand ADA civil rights cases to redress his client's ADA violations." *Id.* at 575. The *Strojnik* court held that the State Bar was immune to suit under the Eleventh Amendment and dismissed the Title V claim. *Id.* at 576. In doing so, the court quoted the *Oliver* court's holding and further stated that "there is a distinction between ones' physical access to the court addressed in *Lane*, and the ones' privilege of being licensed to practice before a particular court." *Id.* at 575.

Within the Second Circuit, access to the courts remains defined as a plaintiff having "the same opportunity as non-disabled citizens to petition the court for redress." *Gribbin*, 2020 WL 1536324, at *9. The weight of authority compels a finding that Plaintiff's allegations do not implicate her fundamental right of access to the courts. Accordingly, the Title II claim should be dismissed under Rule 12(b)(1).

V. **PLAINTIFF DOES NOT ALLEGE THAT THE BOARD'S DENIAL OF REASONABLE ACCOMMODATION WAS MOTIVATED BY ANIMUS OR ILL WILL TOWARDS PLAINTIFF OR PLAINTIFF'S DISABILITY**

Some courts have held that Eleventh Amendment sovereign immunity may be abrogated under Title II if the actions of the defendant are motivated by animus or ill will, focusing on the initial prong of the test in *Georgia*. *See e.g., Russell*, 2019 WL 4805687, at *4 (collecting cases). "Establishing animus requires that a plaintiff disprove the existence of any legitimate government justification." *Manuel v. New York*, No. 18-cv-11820 (VB), 2020 WL 5775271, at *3 (S.D.N.Y Sept. 28, 2020). Plaintiff's allegations fall short here as well.

In *Block v. Texas Board of Law Examiners*, a licensed Louisiana lawyer alleged that the Texas Board of Law Examiners ("TBLE") had violated Title II when it refused to grant plaintiff's admission application in the absence of a passing grade on the Texas bar. 952 F.3d 613, 615 (5th Cir. 2020). The process required applicants to (1) have actively practiced law for at least five of the last seven years (the "active practice requirement"); (2) have a J.D. from an approved law school; and (3) have not previously failed the Texas bar exam. *Id.* at 615. The TBLE had denied plaintiff's application in 2017 because he had not practiced since 2004 and had separately failed the Texas bar examination twice. *Id.* The Fifth Circuit upheld a ruling that the TBLE was entitled to Eleventh Amendment immunity because Title II "does not require States to compromise their essential eligibility criteria for public programs" — "it requires only reasonable modifications," and "only when the individual seeking modification is otherwise eligible for the service." *Id.* at 618. The plaintiff had failed to articulate any "ill will" where the TBLE had merely applied its active practice requirement to his application, which was designed to "ensure[] that applicants have both achieved and *maintained* the skill and knowledge required to practice law in Texas." *Id.* at 618-19.

Immunity is similarly warranted for Defendants here. Plaintiff alleges that she made requests for certain accommodations for a disability, supported those requests with sufficient documentation, and that the Board nevertheless did not award all of the requested accommodations. Dkt. 47 at ¶¶ 32-49, 52-54, 57-58, 60. These allegations, even if true, do not show that the denial of accommodations was motivated by animus or ill will. The differing decisions merely reflect the different documentation presented, and courts have noted that knowledge of a "litigant's disability is plainly insufficient to undermine a state official's sovereign immunity." *Gribbin*, 2020 WL 1536324, at *5. The Second Circuit took the analysis

one step further to state that "merely alleging knowledge of an ADA violation is insufficient to abrogate sovereign immunity." *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 112 (2d Cir. 2001) (cited in *Gribbin*, 2020 WL 1536324, at *5).

Plaintiff only states in conclusory fashion that the Board discriminated against her "by denying necessary accommodation," and that the Board has a "fail-first" policy, which required her to "fail first before providing necessary accommodation."[7] *Id.* at ¶¶ 71, 88, 99. Plaintiff's "general and conclusory allegations falls far short of those present in cases in which animus or ill will has been established." *Russell*, 2019 WL 4805687, at *5 (collecting cases).

Accordingly, Plaintiff's Title II claim should be dismissed.[8]

## VI. THE *EX PARTE YOUNG* EXCEPTION DOES NOT APPLY TO PLAINTIFF'S REQUEST FOR RELIEF

As per the *Ex Parte Young* doctrine, "a plaintiff may sue a state official acting in his official capacity— notwithstanding the Eleventh Amendment— for prospective, injunctive relief from violations of federal law." *Gribbin*, 2020 WL 1536324, at *6. To determine whether the *Ex Parte Young* exception applies, the court "must first determine whether the complaint alleges an ongoing violation of federal law." *Id*.

Plaintiff claims that the *Ex Parte Young* doctrine should apply to prevent future denial of accommodations and enhance future employment prospects. Plaintiff's request for injunctive relief seeks to force Defendants to (1) repudiate their denial of accommodations during the July 2013 and 2014 bar examinations, and (2) expunge the records indicating past bar examination

---

[7] Only in her opposition has Plaintiff claimed that the Board's actions were "arbitrary." Dkt. 52 at 3. The claim should not be considered as a plaintiff cannot amend their pleading their motion papers. *See supra* at 9. Even if the Court were to examine this isolated remark, it fails to show an inference of animus or will based on Plaintiff's disability.

[8] Even if the Court held that this alleged conduct violated Title II, the claim would still be dismissed once the second and third prongs of the *Georgia* test are applied. *See supra* at 4. Defendants have established that this type of alleged misconduct in professional licensing does not violate the Fourteenth Amendment. *See supra* at 5-8.

failures. Dkt. 47 at ¶¶ 3, 92; Dkt. 52 at 16. As addressed in a prior briefing, Plaintiff has failed to allege ongoing harm relating to the July 2013 and July 2014 testing accommodations, and it is undisputed that Plaintiff has been a licensed attorney in New York since October 2015.[9] *See* Dkt. 41 at 8-9. Her complaint only alleges that prospective employers lost interest when they learned that she did not have the "experience" consistent with a 2013 graduate. *See* Dkt. 47 at ¶ 62. Thus, the *Ex Parte Young* exception does not apply.

Plaintiff further fails to assert any instances in which she applied for accommodations and was denied her request based on the Board's prior determination. *See* Dkt. 47 *generally*. Regarding her ability to attain employment, Plaintiff does not assert that Defendants have taken any affirmative action to continue to hinder Plaintiff's employment opportunities. *Id.* Rather, she merely states that she suffers continuing injury from an alleged violation, which is insufficient to establish a continuing violation. *Gribbin*, 2020 WL 1536324, at *6 ("[C]onsequences of the past alleged violation…is not the same as alleging an ongoing constitutional violation").

---

[9] The Attorney Search function shows that Plaintiff was admitted to the First Department on October 5, 2015. *See* http://ww2.nycourts.gov/attorneys/registration/index.shtml (requiring knowledge of Plaintiff's full name).

## CONCLUSION

For the foregoing reasons, and for the reasons stated in Defendants' initial motion papers and their 2018 supplemental papers, the Complaint should be dismissed in its entirety for lack of subject matter jurisdiction and for failure to state a cause of action. The Court should award such other and further relief as it deems proper.

Dated: New York, New York
       August 4, 2021

LETITIA JAMES
Attorney General of the
State of New York

   /s/ Elizabeth Anne Figueira

ELIZABETH ANNE FIGUEIRA
Assistant Attorney General
28 Liberty Street, 16th Floor
New York, New York 10005
Tel: (212) 416-8528
elizabeth.figueira@ag.ny.gov
*Attorneys for Defendants*